UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LONNICE VEREEN,

                        Plaintiff,

          -vs-                                      13-CV-144-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                        Defendant.

---

APPEARANCES:    KENNETH R. HILLER, ESQ., Amherst, New York, for Plaintiff

                        WILLIAM J. HOCHUL, JR., United States Attorney (MARY K. ROACH, Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

This matter has been transferred to the undersigned for all further proceedings, by order of United States District Judge William M. Skretny dated April 23, 2015 (Item 20).

Plaintiff Lonnice Vereen initiated this action on February 11, 2013, pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits under Title II and Title XVI of the Act, respectively. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (see Items 13, 14). For the reasons that follow, plaintiff's motion is denied, and the Commissioner's motion is granted.

**BACKGROUND**

Plaintiff was born on January 16, 1956 (Tr. 250).[1]  She filed applications for SSDI and SSI benefits on October 13, 2009, alleging disability due to arthritis in her back, right leg, and right arm, with an onset date of April 13, 2009 (Tr. 190-99, 118).  The applications were denied administratively on April 20, 2010 (Tr. 48-59).  Plaintiff requested a hearing, which was held on July 21, 2011 before Administrative Law Judge ("ALJ") Timothy M. McGuan (Tr. 29-39).  Plaintiff appeared and testified at the hearing, and was represented by Kathleen A. Traina, a paralegal with Erie County Department of Social Services' Legal Advocacy for the Disabled.

On October 12, 2011, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 21-26).  Following the sequential evaluation process outlined in the Social Security Administration regulations governing claims for benefits under Titles II and XVI (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff's impairments (identified as right knee and mid-lumbar osteoarthritis), while "severe" within the meaning of the Act and considered alone or in combination, did not meet or medically equal the criteria of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 24).  The ALJ discussed the evidence in the record regarding the functional limitations caused by plaintiff's impairments, including the objective medical evidence and plaintiff's testimony about her symptoms, and determined that

---

[1] Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 6).

plaintiff had the residual functional capacity ("RFC") to perform work at the "medium"[2] exertional level, with the accommodation of being able to alternate at will between sitting and standing, with no balancing and no more than occasional postural activities (Tr. 25). Based on this RFC assessment, the ALJ determined that plaintiff would be able to perform the physical and mental demands of her past relevant work as a "mortgage verifier," as that work is actually and generally performed (Tr. 26), and therefore has not been under a disability within the meaning of the Act at any time since the alleged onset date (*id.*).

The ALJ's decision became the final decision of the Commissioner on December 17, 2012, when the Appeals Council denied plaintiff's request for review (Tr. 1-3), and this action followed.

In her motion for judgment on the pleadings, plaintiff seeks reversal of the Commissioner's determination, or remand to the Commissioner for further proceedings, on the following grounds: (1) the ALJ's RFC assessment is not supported by substantial evidence; (2) the ALJ failed to consult a vocational expert to assess the impact of plaintiff's functional limitations; (3) the ALJ breached his duty to further develop the record; and (4) the ALJ failed to properly assess plaintiff's credibility.  *See* Items 13-1, 19.  The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence.  *See* Items 14-1, 18.

---

[2]"Medium work" is defined in the regulations as follows:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. §§ 404.1567(c), 416.967(c).

**DISCUSSION**

**I.     Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive ...."  42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion."  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts.  *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards."  *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis.


1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d

1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

II. **Standards for Determining Eligibility for Disability Benefits**

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R.§§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is

presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement). If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work. If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)). "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the

applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted). If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted). In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

### III. The ALJ's Disability Determination

In this case, ALJ McGuan found at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since January 20, 2010, the alleged onset date (Tr. 23). At step two, the ALJ determined that plaintiff's right knee and mid-lumbar osteoarthritis are "severe" impairments as that term is defined in the regulations because they "impose more than minimal functional limitation" in her ability to perform basic work activities (*id.*). At step three, the ALJ found that these impairments did not meet or equal any listed impairment, based on the medical evidence that plaintiff was "able to ambulate effectively and there is no evidence of motor loss, arachnoiditis or pseudoclaudication" (Tr. 24). The ALJ also considered the evidence regarding plaintiff's alleged mental impairments, relying on the state agency review psychologist's findings indicating no more than mild limitations in the relevant functional areas, and no extended episodes of

decompensation (Tr. 24; citing Listing 12.00C; 20 C.F.R. §§ 404.1520a, 416.920a). Based on this evidence, the ALJ found that plaintiff's medically determinable physical and mental impairments, considered alone or in combination, did not meet or medically equal the severity of any listed impairment (*id.*).

The ALJ then found that plaintiff had the RFC for medium work, accommodated by the ability to alternate at will between sitting and standing, and limited to performance of work that requires no balancing and no more than occasional postural activities (Tr. 25). In making this finding, the ALJ considered the reports and opinions of treating and consultative medical sources, along with plaintiff's hearing testimony regarding the functional limitations caused by the symptoms of her physical and mental impairments, and determined that plaintiff's allegations of disability were not supported by the objective medical evidence in the record (*id.*). The ALJ reviewed office records from treating sources (Tr. 258-89) which showed that plaintiff's osteoarthritis improved significantly during the alleged period of disability, and gave "significant weight" to the January 11, 2010 report and opinion of consultative medical examiner Kathleen Kelley, M.D., indicating functional limitations consistent with the ALJ's RFC assessment (Tr. 25, 290-94). The ALJ also discussed the employability assessment report of treating source Barbara Majeroni, M.D., dated October 9, 2009, which indicated that plaintiff's chronic back pain, right knee pain, and right shoulder pain limited her work activities to "[n]o heavy lifting (>25 lb) or prolonged walking or standing" (Tr. 257). The ALJ determined that this report was not supported by the objective medical evidence, and even if accepted, would not preclude plaintiff from performing her past relevant work as a mortgage verifier (Tr. 26). Accordingly, the ALJ

found that plaintiff had the residual functional capacity to perform her past relevant work, concluding the sequential evaluation process at step four (*id.*).

## IV. Plaintiff's Motion

### A. Assessment of RFC

Plaintiff contends that the Commissioner's disability determination should be reversed because there is no evidentiary support for the ALJ's finding that plaintiff has the RFC for medium work. As explained in the Social Security Administration's policy interpretation ruling regarding the assessment of RFC:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the most.

Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996); *see Blouvet v. Colvin*, 2015 WL 751306, at *8 (W.D.N.Y. Feb. 23, 2015). "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545(a)(3)-(4)). The RFC determination "must be set forth with sufficient specificity to enable [the court] to decide whether the determination is

supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984); *see also Hamlin v. Colvin*, 2014 WL 4669244, at *6 (N.D.N.Y. Sept. 18, 2014).

As indicated above, in this case ALJ McGuan found that plaintiff retained the functional capacity to perform medium work, with the accommodation of being able to alternate at will between sitting and standing, and limited to work requiring no balancing and only occasional postural activities. This finding was based on the ALJ's review of office records and x-ray reports showing that plaintiff's osteoarthritis significantly improved upon limited treatment during the alleged period of disability, with no subsequent knee or back problems as confirmed by continued conservative monitoring (Tr. 25). The court's review of the objective medical evidence in the record as a whole reveals ample support for this assessment.

For example, an x-ray of the right knee taken on June 15, 2009 (two weeks after plaintiff fell and injured her right knee), revealed osteoarthritis of the patellofemoral joint, but no fractures (Tr. 268). An x-ray of her lumbar spine taken the same day revealed mild arthritis, but no fracture or spondylolisthesis (*id.*). At a follow-up visit with Venkata Peppala, MBBS at Cleve-Hill Family Health Center on June 19, 2009, plaintiff had good range of motion of her right knee, with minimal swelling (Tr. 283). Subsequent visits indicated continued pain in her right knee and right shoulder controlled by medication, but otherwise no significant problems (Tr. 276-82).

Plaintiff was also seen by Dr. Scott Darling, M.D., and physical therapist Michael Kempke, PT, ATC, at University Orthopaedic Services, between September and November 2009 (Tr. 258-75). Upon examination on September 29, 2009, Dr. Darling assessed moderate osteoarthritis of the right knee; he injected corticosteroid and prescriber a knee

brace and physical therapy (Tr. 261-62). On November 3, 2009, Dr. Darling noted that this treatment had worked very well, and plaintiff was "so much improved, we opted for conservative monitoring for now" (Tr. 274).

The ALJ also properly credited Dr. Kelley's consultative report and opinion. *See Smith v. Colvin*, 17 F. Supp. 3d 260, 268 (W.D.N.Y. 2014) (opinions of consulting sources may constitute substantial evidence if consistent with the record as a whole, particularly where the consultant directly examines the applicant). Dr. Kelley provided a comprehensive report of the results of her physical examination of plaintiff on January 11, 2010, finding normal gait and stance with or without prescribed use of a cane (Tr. 292), with minor swelling and reduction in right knee range of motion but otherwise substantially normal musculoskeletal findings (Tr. 293). Based on these findings, Dr. Kelley was of the opinion that the following work activities would require comfort breaks: repetitive bending or twisting of the lumbar spine; long standing or sitting; and repetitive kneeling, squatting, crawling, or climbing stairs (Tr. 294). She also recommended caution working around heights, heavy equipment, or sharp objects, and refraining from activity requiring balance (*id.*). The ALJ fully incorporated Dr. Kelley's opinion in his assessment that plaintiff would need to alternate between sitting and standing at will, and limiting her to performance of work requiring no balancing and no more than occasional postural activities (Tr. 25).

Based on this review, the court finds that the ALJ's RFC assessment was performed in accordance with the directives of the Social Security regulations and rulings, and is supported by substantial evidence in the record. Accordingly, plaintiff is not entitled to reversal or remand on the ground that the ALJ failed to properly assess her RFC.

### B.   Failure to Consult a Vocational Expert

Plaintiff also contends that, given the extent of the functional limitations incorporated in the RFC assessment, the ALJ should have consulted a vocational expert to determine the impact of those limitations on plaintiff's ability to perform work at the medium exertional level. However, the cases have routinely held that the ALJ's obligation to present the testimony of a vocational expert arises only at the fifth step of the sequential evaluation, where the burden of persuasion shifts to the Commissioner to show that there are other jobs in the national economy that a claimant can perform. *See, e.g., Avila v. Astrue*, 933 F. Supp. 2d 640, 650-51 (S.D.N.Y. 2013) (citing *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986); *Rosa v. Callahan*, 168 F.3d 72, 77–78 (2d Cir. 1999)); *see also Petrie v. Astrue*, 412 F. App'x 401, 409 (2d Cir. 2011) ("While an expert is often called upon to explain the requirements of particular jobs, step four of the analysis does not *require* that an ALJ consult an expert."). Here, the ALJ decided the claim at the fourth step of the sequential evaluation, finding that plaintiff could do her past relevant work as a mortgage verifier. Accordingly, plaintiff is not entitled to reversal or remand on the ground that the contention that the ALJ failed to consult a vocational expert.

### C.   Duty to Develop the Record

Plaintiff also seeks reversal or remand on the ground that the ALJ failed to develop the administrative record by making further inquiry regarding how plaintiff's subjective complaints and limitations might impact her ability to perform in a job setting. " 'It is a well-settled rule in the Second Circuit that the Commissioner must affirmatively develop the administrative record due to the essentially non-adversarial nature of a benefits

proceeding.' " *Felder v. Astrue*, 2012 WL 3993594, at *11 (E.D.N.Y. Sept. 11, 2012) (quoting *Garcia v. Apfel*, 1999 WL 1059968, at *5 (S.D.N.Y. Nov. 19, 1999)); *see also Rosa*, 168 F.3d at 79. However, the ALJ's duty to develop the record is not without limit. *See Guile v. Barnhart*, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010). If all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary and the ALJ may make his determination based upon that evidence. *See* 20 C.F.R. §§ 404.1520b(a), 416.920b(a). Consistent with that notion, where there are no "obvious gaps" in the record, the ALJ is not required to seek additional information. *Rosa*, 168 F.3d at 79 n. 5; *see also Herb v. Colvin*, 2015 WL 2194513, at *6 (W.D.N.Y. May 11, 2015).

As discussed above, the record contains ample support for the ALJ's findings regarding plaintiff's RFC and ability to return to her past relevant work, and the court's review of the hearing transcript reveals that plaintiff testified about her activities of daily living (Tr. 36-38); the side effects of her medications (Tr. 35); the severity and frequency of her pain, and the extent to which pain would interfere with her ability to perform work activities (Tr. 33-36); the mental and physical demands of her past relevant work (Tr. 32); and the limited treatment she received for her physical and emotional difficulties (Tr. 35). Accordingly, the court finds that the evidence presented to the ALJ was sufficient to provide a reasonable basis for his disability determination, and plaintiff is not entitled to reversal or remand on the ground that the ALJ failed to discharge his duty to affirmatively develop the record.

### D. Credibility

Finally, plaintiff contends that the ALJ failed to properly assess plaintiff's credibility with respect to his subjective complaints of pain. The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged. *See Paries v. Colvin*, 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999)). The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y.2005), *quoted in Hogan v. Astrue*, 491 F. Supp. 2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. §§ 404.1529, 416.929.

In this case, the ALJ determined that plaintiff's allegations of disabling osteoarthritis "are not supported by the objective evidence[,]" concluding the credibility evaluation at the first step of the process. As already discussed, the court's review of the record as a whole reveals substantial support for the ALJ's findings regarding the improvement of plaintiff's knee condition upon undergoing treatment; the conservative nature and limited duration of the treatment; and plaintiff's retained functional capacity for work consistent with her testimony about her activities of daily living, the side effects of her medications,

the severity and frequency of her pain, and the extent to which pain would interfere with her ability to perform work activities. Based on this review, the court finds that the ALJ's credibility evaluation is supported by the evidence in the case record, and is sufficiently specific to make clear to plaintiff and to subsequent reviewers the weight given to her statements and the reasons for that weight. *See Blouvet v. Colvin*, 2015 WL 751306, at *10-11 (W.D.N.Y. Feb. 23, 2015) (citing SSR 96–7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996)).

Accordingly, plaintiff is not entitled to reversal or remand on the ground that the ALJ failed to properly evaluate plaintiff's credibility.

## **CONCLUSION**

For the foregoing reasons, the court finds that the ALJ's decision is based on correct legal standards and supported by substantial evidence, and the Commissioner's determination must therefore be upheld. Accordingly, plaintiff's motion for judgment on the pleadings (Item 13) is denied, the Commissioner's motion for judgment on the pleadings (Item 14) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of plaintiff, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   September 30, 2015